[L. A. No. 23995. In Bank. Oct. 11, 1956.]

Estate of CHARLIE ELLA FRAYSHER, Deceased. GEORGIA REYNOLDS, Appellant, v. DAVID N. FRAYSHER, Respondent.

C. E. Crowley for Appellant.

Edgar C. Keller for Respondent.

SPENCE, J.—Charlie Ella Fraysher, a widow, died leaving a small estate and an holographic will, which gave to each of her children $1.00, except for her daughter Georgia Reynolds, to whom she bequeathed "the Place & all Households articulars." It is agreed that this bequest meant the deceased's home, appraised at $2,500, and the furnishings therein, appraised at $100, which property constituted the principal assets of the estate. Pursuant to the will, the deceased's son, David N. Fraysher, was appointed the executor. When the executor, a resident of Oregon, sought approval of his first account and accompanying report, Georgia Reynolds, a resident of Kansas and the principal beneficiary, filed written objections to several items, citing certain credits and debts, a sale of part of the personal property, and the failure

to rent the real property. In support of her objections, she filed her own affidavit and that of her sister, Shirley Smith; and the executor filed an affidavit in his behalf. As the parties agree, the account and objections, affidavits and counteraffidavit, were all submitted to the court "without taking of testimony" and "after argument."

Thereafter, the court made its "Order Approving First Account Current and Report of Executor, Including Allowance upon Commissions of Executor, Attorney Fees and Extraordinary Attorney Fees; Confirming Sale of Personal Property; and Instructing Executor." The objector Georgia Reynolds appeals from those portions of the order (a) "approving the claim of David N. Fraysher in the sum of $461.67"; (b) "approving 'all items of expenses listed in Schedule "A" of said account excepting the certain items enumerated'"; (c) "approving the claim of $200 for extraordinary attorney's fees, and allowing statutory fees for executor and attorneys"; (d) "confirming the sale of the household furnishings set forth as Exhibit 'A,' sold to a son of the executor, at least six months before appraisement, without notice"; and (e) generally "approving said account current 'in all other respects, other than as otherwise herein set forth,' thereby overruling the objections to said report made by this appellant."

Following the hearing and the making of the order, the objector moved for an order requiring the executor to produce for inspection the bank statements, cancelled checks and diary of the deceased. The court made its order denying such motion, and the objector appeals therefrom. As there is no authority for such an appeal (Prob. Code, § 1240), it must be dismissed.

Turning to the appeal from the order settling the executor's account, appellant contends that the challenged portions were approved without sufficient evidence, "without due consideration and without authority." Her position is not well taken.

Preliminarily, there is a question of procedure to be determined. Normally, in the contest of an account the respective parties produce witnesses to be examined in open court. And when an appeal is taken on issues of fact, it is necessary to bring a record of the evidence before the appellate court. (*Estate of Reed,* 9 Cal.App.2d 94, 96-97 [48 P.2d 177]; see 34 C.J.S. § 931 "Record," pp. 1145-1147.) Here the executor's account was settled solely upon the basis of opposing

affidavits. There is therefore no reporter's transcript. ■ Section 1233 of the Probate Code authorizes the use of affidavits or verified petitions as evidence ". . . in any uncontested probate proceedings"; but there appears to be no statutory provision authorizing the substitution of affidavits for oral evidence in a contested probate proceeding such as this.

■ Ordinarily, affidavits may not be used in evidence unless permitted by statute. (2 Cal.Jur.2d § 30, p. 637.) Thus, it has been held error to admit affidavits in evidence over objection (*Lacrabere v. Wise*, 141 Cal. 554, 556 [75 P. 185]) or where the opposing party has no opportunity to object to their use. (*Estate of Paulsen*, 35 Cal.App. 654, 656 [170 P. 855]; *Reidy v. Collins*, 134 Cal.App. 713, 722 [26 P.2d 712].) ■ But this is a different situation in that the parties did not object to the use of affidavits in evidence, and both parties adopted that means of supporting their positions. Both having participated in such presentation of the evidence as a matter of convenience in view of the fact that both were nonresidents of this state, they cannot question the propriety of the procedure on appeal. (*Estate of Reilly*, 81 Cal.App.2d 564, 569-570 [184 P.2d 922].) ■ Moreover, evidence which is admitted in the trial court without objection, although incompetent, should be considered in support of that court's action (*Stickel v. San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 161 [195 P.2d 416]; also *Parsons v. Easton*, 184 Cal. 764, 769 [195 P. 419]), and objection may not be first raised at the appellate level. (*Soares v. Ghisletta*, 1 Cal.App.2d 402, 404-405 [36 P.2d 668].) The various disputed items of account must therefore be examined in the light of the opposing affidavits.

■ Appellant first objects to the approval of the executor's claim for $461.67 as reimbursement for advances made on behalf of the deceased. While she contends that such claim is vague and uncertain, "fictitious" and "padded," it appears that every item, except for a small amount for postage, was supported by a receipt or cancelled check filed with the executor's affidavit. The court made its order settling these issues of fact after a review of the conflicting affidavits, and its implied findings as to the propriety of the contested items will not be disturbed on appeal. (*Doak v. Bruson*, 152 Cal. 17, 19 [91 P. 1001]; *Hall v. Bohannon*, 38 Cal.2d 458, 466 [241 P.2d 4]; *Voeltz v. Bakery etc. Union*, 40 Cal.2d 382, 386 [254 P.2d 553].)

■ Nor are appellant's objections well taken to certain items of expense listed in Schedule A and approved. These items consisted of expenses of administration, taxes, water bills, and gasoline costs for two trips made by the executor to California. At the hearing appellant only objected to the gasoline charges. One trip was for the executor's appearance in court resisting appellant's petition for his removal, and the other trip was for the executor's consultation some two months later with his attorney. The court allowed a portion of the gasoline expenses for the first trip and disallowed entirely such expenses for the second trip. Appellant now for the first time questions the propriety of the yearly water charges, contending that ''for a year's time no water was used on the premises.'' There is nothing in the record which supports this statement, the matter was not in issue at the hearing, and the point may not now be raised. ■ In passing upon the reasonableness and necessity of expenditures during administration, the court below is vested ''with a broad discretion,'' which will not be disturbed on appeal except when abused. (*Estate of Parker*, 186 Cal. 668, 670 [200 P. 619]; *Estate of Lindauer*, 53 Cal.App.2d 160, 165 [127 P.2d 589].)

Appellant next objects to the allowance of $200 for extraordinary attorney fees, and to the allowance of statutory fees for the executor and his attorneys. ■ As the basis for the extraordinary attorney fees, the account and report sets forth the commencement of proceedings for the sale of the real property in the estate (which were later discontinued at appellant's request), the successful representation of the executor on two separate court hearings required on appellant's motions for his removal, and the time spent, some thirty-seven hours, in performing these services. The allowance of extraordinary attorney fees for such professional services ''rests largely in the discretion of the court in the first instance'' (*Estate of Parker*, 186 Cal. 671, 672 [200 P. 620]), and it cannot be said here that there is no basis in the record for the extra compensation. (*Estate of Gump*, 129 Cal.App. 2d 783, 790 [277 P.2d 886].)

■ Nor can appellant prevail in her objections to the statutory fees allowed the executor and his attorneys. The computation was made on the basis of the full inventoried value of the assets of the estate as set forth in the amended inventory, which included a debt listed against appellant for $900 and one against Shirley Smith, also the deceased's daughter, for $375. Both alleged debtors denied, by affidavit,

that they owed these sums. Appellant admitted that she had received $900 as proceeds of a mortgage on the deceased's home through a bank loan but claimed that she had subsequently repaid it in full. Affiant Smith likewise admitted she had received from the deceased $375 but claimed that such amount was only reimbursement for her payments on a mortgage for the deceased. Appellant refers to these two debts as endeavors of the executor to "pad" the inventory with false items. The executor requested the court for instructions as to whether he should file suit on these two claims, and the court directed him not to do so. Such instruction does not necessarily indicate the court's recognition of the invalidity of these two claims. Rather, the court may well have considered it economically impractical to litigate these debts in view of the conflicting affidavits, the requirements of their proof, and the resulting increase in family disputes as brother and sisters sought to resolve their differences. Moreover, appellant is substantially the sole beneficiary under the deceased's will and enforcement of the estate's claim against her, with the accompanying court costs, would only ultimately operate to her economic disadvantage. There is no evidence of bad faith on the part of the executor in preparing the amended inventory, and there is implicit in the court's order settling the executor's account a finding that no such factor entered into his handling of the estate. Under the circumstances the record supports the court's determination, in the exercise of its discretion, that the statutory fees should be computed in conformity with the amended inventory's listing of the estate's assets; and the executor agrees that any commissions coming to him should be applied on his indebtedness to the estate. (*Estate of Clary*, 203 Cal. 335, 346-347 [264 P. 242].)

Likewise there is no merit to appellant's objection to the court's confirmation of the sale of certain household furnishings to a son of the executor for $60. These furnishings were part of the personal property in the deceased's home that were left to appellant by the will. The inventory was filed some six months after the sale, and the value of all household furnishings was listed at $100. Appellant complains that the sale was made before the items were appraised and without notice to her. The executor, however, in his affidavit states that while the formal appraisal was not filed until later, the appraiser some four months prior to the sale made his findings of value on the property and a copy there-

of, with summary of the estate's indebtedness, was sent to appellant's attorney; that appellant made no objection thereto; that it was necessary to pay certain administration expenses and obligations of the estate; that in correspondence with the executor's attorneys, appellant's attorney had previously indicated that appellant would "pay all of the expenses of administration and legitimate claims against the estate, and let the property be distributed to her at the end of the administration"; that in reply thereto, the executor's attorneys set a "deadline" for appellant to advance the necessary moneys so that no part of the property would have to be sold; that some three months after the deadline had expired and having had no further word from appellant or her attorney, the particular items of household furnishings were sold to meet the estate's indebtedness as allowed by statute. (Prob. Code, §§ 750, 751.) Appellant does not question the amount of $60 received for the items sold, which was more than half the total appraised value of all household furnishings, or that the remaining items, if sold, would reasonably produce at least a like amount. These were all matters for the court to reconcile in the exercise of its sound discretion upon consideration of the opposing affidavits; and its acceptance of the executor's sworn statements as the basis for its order confirming the sale of the household furnishings will not be disturbed. (*Matter of Application of LaDue,* 161 Cal. 632, 635 [120 P. 13].)

Finally, appellant attacks the court's general approval of the executor's account current except as specifically noted, "thereby overruling the objections to said report made by this appellant." Coming within this category was appellant's argument concerning the rental possibility of the deceased's home. It is appellant's position that said home had a rental value of $35 per month, that she had submitted to the executor the name of a person willing to pay such rent, but that the executor nevertheless elected to let the home stand vacant for over a year contrary to his duty to take charge of all property in the estate and account for available rents in the course of his administration. (Prob. Code, § 581.) In his affidavit, the executor referred to various attempts that he had made to rent the premises through a real estate agent "but was prevented from doing so by the actions of objector (appellant)"; that he did not feel that the tenant recommended by appellant would be satisfactory because such person had previously "used decedent's telephone for long

distance calls,'' for which the estate was charged, and had failed to pay for the calls though demand therefor was twice made upon her by his attorneys. Implicit in the court's order approving the executor's account is the finding that he had acted properly, with due diligence and in good faith in the administration of the estate. (*In re Moore,* 96 Cal. 522, 525 [31 P. 584].) Apparently, the court accredited the executor's stand in the matter, and the evidence sustains its conclusion. (*Wolfson* v. *Haddan,* 105 Cal.App.2d 147, 149 [233 P.2d 145].)

Appellant further argues several factual issues relating to the alleged failure of the executor to account for certain moneys received by him for application to burial expenses for the deceased. These matters were not grounds of specific objection taken by appellant to the submitted account, but the first reference to them appears to have been made in the affidavits later filed by appellant and her sister Shirley Smith. The affidavits were served on the executor's attorney on the day of the hearing. It is the general rule that in the absence of an independent inquiry undertaken by the court, the issues for settlement are limited by the account and report on the one hand and the written objections on the other. (*Estate of Boyes,* 151 Cal. 143, 147-148 [90 P. 454].) Under the circumstances presented here, the executor neither had the opportunity nor was he required to submit evidence on the alleged accounting discrepancies tardily raised by appellant, they were not properly before the court for settlement (*Estate of Mallory,* 99 Cal.App. 96, 102 [278 P. 488]; *Estate of Roberts,* 49 Cal.App.2d 71, 81 [120 P.2d 933]), and it did not undertake to pass upon them. Likewise they are not matters for consideration on this appeal.

In summary, the record indicates that the executor made such explanations of his administration as to impress the trial court with his honesty and good faith. The estate is relatively small and it unquestionably has provoked a great deal of unfortunate family feuding between brother and sisters. The trial court has apparently reconciled the differences fairly and reasonably, and there appears no reason for intervention in its settlement by the reviewing court.

The portions of the order approving the account from which the appeal was taken are affirmed. The attempted appeal from the order denying appellant's motion for an order requiring the executor to produce for inspection the

bank statements, cancelled checks, and diary of the deceased is dismissed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.